UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEALINK FUNDING LIMITED,

    Plaintiff,

No. 12 Civ. 1397 (LTS)(HBP)

-against-

BEAR STEARNS & CO. INC. et al.,

    Defendants.

------------------------------------x



MEMORANDUM OPINION AND ORDER

Plaintiff Sealink Funding Limited ("Plaintiff") originally filed this action in New York state court, asserting fraud claims under New York law against several financial entities[1] in connection with the packaging and sale of residential mortgage-backed securities ("RMBS"). Defendants removed the action to this Court. Defendants' notice of removal (the "Removal Notice") asserted two jurisdictional bases for removal: (1) "related to" bankruptcy jurisdiction, 28 U.S.C. § 1334(b), and (2) the Edge Act. 12 U.S.C. § 632. Plaintiff now moves for an order remanding this action to New York state Supreme Court, arguing that this Court lacks subject matter jurisdiction under either statute. For the following reasons, Plaintiff's remand motion is

---

[1] Defendants in this action are: EMC Mortgage LLC (f/k/a EMC Mortgage Corporation) and J.P. Morgan Mortgage Acquisition Corporation as sponsors for the offerings at issue (Am. Compl. ¶¶ 16, 27); Structured Asset Mortgage Investments II Inc., Bear Stearns Asset Backed Securities I LLC, Washington Mutual ("WAMU") Asset Acceptance Corp. (now owned by defendant JPMorgan Chase Bank, N.A.), and J.P. Morgan Acceptance Corporation I, as depositors (id. ¶¶ 17-18, 22, 28); and WAMU Capital Corp. and J.P. Morgan Securities LLC as underwriters. (Id. ¶¶ 21, 26). Plaintiff also bring suit against The Bear Stearns Companies, Inc. ("Bear Stearns"), its successor-in-interest, JPMorgan Chase & Co. (id. ¶ 24), and JPMorgan Chase Bank, N.A. ("Chase Bank"), which created the trust holding several of the securities at issue.

granted.

## BACKGROUND

Plaintiff is a company incorporated under the laws of Ireland that was established to receive, hold, and manage RMBS purchased by certain special purpose vehicles ("SPVs") formerly sponsored by Sachsen LB. (Am. Compl. ¶ 13.) The RMBS were transferred to Sealink on June 7, 2008. (Id.) Plaintiff brings state law fraud claims against Defendants in connection with their alleged misrepresentation of the risk profile of the RMBS Certificates and the underlying mortgage loans in various registration statements, prospectuses, prospectus supplements and other written materials ("Offering Documents") issued in connection with the sale of those Certificates. (Am. Compl. ¶¶ 1, 259-346.)

The alleged misrepresentations in the Offering Documents were based on representations initially made to Defendants by the loans' originators, including several originators who are now or have been debtors in bankruptcy proceedings ("Bankrupt Originators"). As part of the purchase and sale agreements for these mortgages, Defendants allege, the Bankrupt Originators agreed to indemnify several of the Defendants for the costs of defending actions arising out of the sort of misrepresentations alleged in this case. (Declaration of Daniel Slifkin ("Slifkin Decl.") ¶ 4, Exs. 1-9.) The Bankrupt Originators against whom Defendants assert that they have indemnification rights include: Aegis Mortgage Corporation ("Aegis"); Alliance Bancorp ("Alliance"); American Home Mortgage Corporation ("AHM"); Bear Stearns Residential Mortgage Corporation ("Bear Stearns Residential"), a subsidiary of Accredited Home Lenders ("Accredited"); First Magnus Financial Corporation ("First Magnus"); Fremont Investment & Loan ("Fremont"); IndyMac Bank, F.S.B. ("IndyMac"), a subsidiary of IndyMac Bancorp Inc. ("IndyMac Bancorp"); and SouthStar Funding, LLC ("SouthStar").

In the Aegis bankruptcy, Defendants Bear Stearns and EMC Mortgage Corp. filed proofs of claim. However, those claims were subsequently settled and withdrawn. (Declaration of Chad Johnson in Support of Plaintiff's Motion for Remand ("Johnson Decl.") Exs. 4 & 5.) Bear Stearns and EMC Mortgage Corp. expressly represented in their agreement with Aegis that they had "no other claims against the Debtors except for those proofs of claim described in this Stipulation." (Johnson Decl. Ex 5 at 8.) The settlement was approved by the bankruptcy court on February 12, 2009. In the Alliance and First Magnus bankruptcies, no proof of claim for indemnification obligations was filed by any Defendant before the bar date; the bankruptcy proceedings are ongoing. In the AHM bankruptcy, Defendant J.P. Morgan Acceptance Corporation I filed a proof of claim after the bar date. (Slifkin Decl. ¶ 9, Ex. 14.) That claim has not been disallowed or otherwise adjudicated. In the bankruptcies of Accredited, Fremont, and IndyMac Bancorp, no Defendant has filed a proof of claim. In the SouthStar bankruptcy, Defendant WAMU Bank filed a timely proof of claim; that Chapter 7 bankruptcy proceeding was closed on April 5, 2011, after all assets were liquidated and the proceeds distributed to creditors. (Johnson Decl. Ex. 3.) In sum, Defendants have not filed a timely proof of claim in any open bankruptcy proceeding involving a Bankrupt Originator.

DISCUSSION

Any civil action brought in state court may be removed to a federal district court "only if it could have originally been commenced in federal court." Allstate Ins. Co. v. Ace Sec. Corp., No. 11 Civ.1914(LBS), 2011 WL 3628852, at *3 (S.D.N.Y. Aug.17, 2011); 28 U.S.C. § 1441(a). If a case is removed and a federal district court determines that it lacks jurisdiction over the matter, the court must order remand. Id. § 1447. "When challenged, the party seeking

removal bears the burden of establishing that the federal district court has jurisdiction." Allstate Ins. Co. v. CitiMortgage, Inc., 11 Civ. 1927(RJS), 2012 WL 967582, at *2 (S.D.N.Y. Mar. 13, 2012); Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir.1998). On a motion for remand, the court "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff." In re NASDAQ Mkt. Makers Antitrust Litig., 929 F. Supp. 174, 178 (S.D.N.Y. 1996). Moreover, "[r]emoval jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." Id. (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109 (1941)); see also In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 488 F.3d 112, 124 (2d Cir. 2007) ("out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability") (internal quotation marks and alterations omitted).

A.   "Related To" Bankruptcy Jurisdiction

Defendants assert that the Court has jurisdiction of this action pursuant to 28 U.S.C. § 1334(b), which confers on district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C.A. § 1334(b) (West 2009). The Second Circuit has explained that a case is "related to" a title 11 bankruptcy proceeding for purposes of § 1334(b) "if the action's outcome might have any conceivable effect on the bankrupt estate." Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011) (internal quotation marks omitted). "Conceivable effects typically manifest themselves by altering the amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors." Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, No. 11 Civ. 2232(NRB), 2011 WL 4965150, at *3

(S.D.N.Y. Oct.19, 2011). A contingent outcome may satisfy the "conceivable effects" test. Id.; see also Parmalat, 639 F.3d at 579 (concluding that the test was satisfied because a possible outcome of the underlying action would augment the bankruptcy estate). However, the Supreme Court has cautioned that "a bankruptcy court's 'related to' jurisdiction cannot be limitless." Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995). Thus, "any contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction." Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, 2011 WL 4965150, at *3; see also Pacor, Inc. v. Higgins, 743 F.2d 984, 995 (3d Cir. 1984) (finding that, absent an "automatic creation of liability" against the debtor, the underlying action was too far removed from the bankruptcy to be related).

        Defendants' "related-to" jurisdictional assertion is premised on the proposition that their potential indemnification claims and recovery against Bankrupt Originators could conceivably affect those debtors' estates. However, the indemnification claims against the Bankrupt Originators cannot affect the bankruptcy estate or the allocation of property to creditors unless Defendants are in a position to receive actual distributions on account of allowed indemnification claims. There is no prospect of such allowance and distribution with respect to unsecured claims that are neither filed in a bankruptcy proceeding or scheduled as undisputed by a Chapter 11 debtor in possession. See Fed. R. Bankr. P. 3002(a), 3003(b). There is no indication in the record that any of the Bankrupt Originators has scheduled any of Defendants' indemnification claims. Furthermore, Defendants concede that they have not filed a timely proof of claim in any open bankruptcy proceeding.[2] Generally, a creditor must file a proof of claim

---

[2]     Defendants also concede that several of the late-filed claims do not relate to this litigation, and that certain claims have already been expunged.

before the court-imposed bar date. In re Enron Creditors Recovery Corp., 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007); see also Fed. R. Bankr. P. 3003(c)(3). Nonetheless, Defendants argue that at least some of their untimely proofs of claim might be allowed under Federal Rule of Bankruptcy Procedure 9006(b)(1), which permits a court to allow a time-barred proof of claim "where the failure to act was the result of excusable neglect." Defendants speculate that a bankruptcy court might excuse their failure to file timely proofs of claim because Defendants did not anticipate their indemnification claims prior to the filing of this suit (i.e., after the bar dates).

An identical argument was advanced and rejected in Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, No. 11 Civ. 2232(NRB), 2011 WL 4965150, at *5 (S.D.N.Y. Oct. 19, 2011). In that case, Judge Buchwald noted that "[a]n indemnification right 'arises at the time the indemnification agreement is executed,' and it constitutes a claim under the Bankruptcy Code even if the act giving rise to indemnification has not yet occurred." Id. (quoting Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125, 128-29 (2d Cir. 2000). Thus, "defendants could, and should, have asserted their indemnification claims prior to the bar dates." Id.; see also P.A. Props., Inc. v. B.S. Moss' Criterion Ctr. Corp., No. 02 Civ. 4900(LTS) 2004 WL 2979984, at *12 (S.D.N.Y. Dec. 23, 2004) (holding that, because indemnity agreements create contingent rights to payment upon their execution, claims based on such agreements must be asserted prior to the bar date). A remote chance that a late-filed claim might be allowed, without evidence of pursuit of such claims or any demonstration that the claims, if allowed, would have a financial impact on the estate, is too remote and speculative to support the exercise of "related to" jurisdiction of this non-core state law fraud action. See Allstate Ins. Co. v. Merril Lynch & Co., No. 11 Civ. 2280(DAB) (S.D.N.Y. August 15, 2011); Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC, 2011 WL 4965150, at *5.

Even if this action did have the potential to affect the Bankrupt Originators' bankruptcies, any effect would be so attenuated and tangential that the Court would exercise its discretion to abstain from deciding the issue pursuant to 28 U.S.C. § 1334(c)(1). Courts in this district look to the following non-exclusive list of factors in determining whether equitable remand is appropriate:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

Farace v. Pereira, No. 04 Civ. 1880(RWS), 2004 WL 1638090, at *6-7 (S.D.N.Y. July 22, 2004). As explained above, Defendants have not articulated any plausible way in which this action will affect the efficient administration of the administration of the Bankrupt Originators' estates. Plaintiff's claims exclusively involve state law. Comity considerations favor remand as well, because "[i]t is well-settled that comity considerations dictate that federal courts should be hesitant to exercise jurisdiction when state issues substantially predominate." In re 9281 Shore Road Owners Corp., 214 B.R. 676, 696 (E.D.N.Y.1997). Remanding to state court preserves the parties' right to avail themselves of a jury trial. Finally, Defendants have not identified any prejudice that would result from this action being remanded to state court.

B.  <u>Edge Act</u>

The Edge Act, 12 U.S.C. §§ 601 <u>et seq.</u>, provides federal district courts with an independent basis for exercising subject matter jurisdiction over certain state or common law actions involving international banking by designating such actions as "federal question" actions. The Act provides, in relevant part:

> [A]ll suits of a civil nature at common law or in equity to which any corporation

>organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations, either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries, shall be deemed to arise under the laws of the United States and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States . . . .

12 U.S.C.A. § 632 (West 2009) (emphasis added). To establish Edge Act jurisdiction, a party must therefore demonstrate (1) that one of the parties is a "corporation organized under the laws of the United States" – i.e., a chartered bank; and (2) that the controversy arises out of either "transactions involving international or foreign banking" or "other international or foreign financial operations." Here, the threshold requirement is met by virtue of Chase Bank's inclusion as a Defendant. Defendants argue that this action arises out of the sale of U.S. securities to a foreign entity, something they characterize as a quintessential "international or foreign financial operation[]." Plaintiff responds that Edge Act jurisdiction is lacking because Chase Bank did not participate in any foreign or international aspect of the packaging or sale of the securities; rather, Chase Bank's involvement was limited to "creating U.S. trusts holding U.S. mortgages for U.S. homes that were of much poorer quality than Chase Bank's U.S. underwriter affiliate represented to unsuspecting investors." (Pl's Mot. at 19.)

Judicial attempts to construe the Edge Act have generated a variety of disparate results, see, e.g., Bank of New York v. Bank of America, 861 F. Supp. 225, 232 (S.D.N.Y. 1994) (noting that courts have generally interpreted 12 U.S.C. § 632 narrowly); Bank of America Corp. v. Lemgruber, 385 F. Supp. 2d 200, 214 (S.D.N.Y.2005) (noting that courts have generally interpreted 12 U.S.C. § 632 broadly), and the case law offers little guidance as to the scope of the "other international or foreign financial operations" prong, other than to observe that it means

something "other than banking." See Stamm v. Barclays Bank of New York, No. 96 Civ. 5158(SAS), 1996 WL 614087 (S.D.N.Y. Oct. 24, 1996); In re Lloyd's American Trust Fund Litigation, 928 F. Supp. 333, 341 (S.D.N.Y. 1996).

There is case law squarely holding that the sale of securities to entities abroad constitutes an international or foreign financial operation."[3] However, for Edge Act jurisdiction to attach, there must be a direct nexus between the bank and the foreign activity. See Lazard Freres & Co. v. First Nat'l Bank of Md., No. 91 Civ. 0628(KMW), 1991 WL 221087, at *2 (S.D.N.Y. Oct.15, 1991) (the Edge Act does not confer "jurisdiction merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties."). The Edge Act provides for jurisdiction where a claim "aris[es] out of . . . international or foreign financial operations, either directly or through . . . branches or local institutions," 12 U.S.C.A. § 632 (West 2009) (emphasis added), which suggests that the bank itself or its affiliate must be directly involved in the international or foreign aspect of the operation. Such was the case in all of the decisions on which Defendants rely. See, e.g., Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200 (S.D.N.Y. 2005) (arising out of U.S. banks' purchase of stock

---

[3] See, e.g., Warter v. Boston Sec., S.A., No. 03 Civ. 81026(RYS), 2004 WL 691787, at *8 (S.D. Fla. Mar. 22, 2004) ("'International financial operations' includes the sale of securities."); Bank of Am. Corp. v. Lemgruber, 385 F. Supp. 2d 200, 215 n. 13 (S.D.N.Y. 2005) (noting that the "common meaning" of "finance" is "to supply with funds through the issuance of stocks, bonds, notes or mortgages"); Travis v. National City Bank, 23 F. Supp. 363 (E.D.N.Y. 1938) (sale and distribution of securities by foreign corporation to American holders constituted foreign financial operations for purposes of section 632); see also Clarken v. Citicorp Diners Club, Inc, No. 01 Civ. 5123(MFK), 2001 WL 1263366, at *2 (N.D. Ill. Oct. 22, 2001) ("defendants' payment for . . . purchases in foreign countries and their conversion to U.S. dollars of the amounts they advanced to pay for those purchases . . . constitute 'international or foreign financial operations'").

from foreign banks); In re Lloyd's Am. Trust Fund Litig., 928 F. Supp. 333 (S.D.N.Y. 1996) (suit against Citibank arising out of instruction it received from Lloyd's of London); Am. Int'l Grp., Inc. v. Bank of Am. Corp., No. 11 Civ. 6212 (BSJ), 2011 WL 5022716, at *3 (S.D.N.Y. Oct. 20, 2011) (suit against banks that originated territorial mortgages).

There is nothing in the record suggesting a direct nexus between Chase Bank and the foreign activity in this case. Nowhere is it alleged that Chase Bank originated territorial mortgages, or that it participated in the actual sale of the RMBS to buyers, domestic or aborad. Rather, its role appears to have been limited to creating U.S. trusts that held U.S. mortgages – actions that had no international dimension. The fact that other Defendants ultimately decided sell the RMBS to foreign entities could well have been fortuitous as far as Chase Bank was concerned. That decision was also far downstream from Chase Bank's participation in the packaging of RMBS. The Court therefore finds that the proffers concerning the connection between Chase Bank's involvement in this action and the ultimate sale of RMBS to Plaintiff are too attenuated to support Edge Act jurisdiction.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is granted. The Clerk of Court is directed to effectuate the remand and close this case. This Memorandum Opinion resolves docket entry no. 7.

SO ORDERED.

Dated: New York, New York
October 9, 2012

LAURA TAYLOR SWAIN
United States District Judge